# United States Court of Appeals
# for the Eleventh Circuit

**RANDALL CALLAHAN,** *et al.,*

*Plaintiffs-Appellees,*

v.

**UNITED NETWORK FOR ORGAN SHARING,**

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Georgia
Case No. 1:19-cv-01783-AT (HON. AMY TOTENBERG)

---

## BRIEF OF APPELLANT UNITED NETWORK FOR ORGAN SHARING

---

Jay S. Blumenkopf
GORDON REES SCULLY
  MANSUKHANI, LLP
One Battery Park Plaza
28th Floor
New York, NY 10004
(212) 453-0798
jblumenkopf@grsm.com

Linda T. Coberly
  *Counsel of Record*
Daniel D. Rubinstein
Thomas G. Weber
Sean H. Suber
Melanie L. Lee
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5600
lcoberly@winston.com

*(additional counsel on inside cover)*

Sara Anderson Frey
GORDON REES SCULLY
  MANSUKHANI, LLP
1717 Arch Street
Suite 610
Philadelphia, PA 19103
(215) 717-4009
sfrey@grsm.com

Kimberly C. Sheridan
GORDON REES SCULLY
  MANSUKHANI, LLP
55 Ivan Allen Jr. Blvd., N.W.
Suite 750
Atlanta, GA 30308
(404) 978-7324
ksheridan@grsm.com

Lauren Gailey
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
(202) 282-5000

*Counsel for Defendant-Appellant United Network for Organ Sharing*

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant-Appellant United Network for Organ Sharing (UNOS) furnishes the following Certificate of Interested Persons and Corporate Disclosure Statement:

1.   Alloy, Jason S. (Counsel for Intervenors Susan Jackson and Charles Bennett).

2.   Anderson, Christopher D., MD (Former Councillor Reg. 3, UNOS/OPTN Board of Directors; Appellees' expert in lower-court action).

3.   Barnes-Jewish Hospital, a wholly owned subsidiary of BJC Health System d/b/a BJC HealthCare (Plaintiff-Appellee).

4.   Becker, Yolanda T., MD (Former President, UNOS/OPTN Board of Directors; Intervenors' expert in lower-court action).

5.   Belinfante, Joshua B. (Counsel for Intervenors Susan Jackson and Charles Bennett).

6.   Bennett, Charles (Intervenor).

7. Bennett, Michelle R. (Counsel for U.S. Department of Health and Human Services, Defendant).

8. Blumenkopf, Jay S. (Counsel for UNOS).

9. Boies Schiller Flexner LLP (Counsel for Intervenors Susan Jackson and Charles Bennett).

10. Callahan, Randall (Plaintiff-Appellee).

11. Canfield, Peter C. (Counsel for Plaintiffs-Appellees).

12. Carrell, Courtney A. (Counsel for Plaintiffs-Appellees).

13. Charrow, Robert P. (Counsel for U.S. Department of Health and Human Services, Defendant).

14. Clark, Jeffrey Bossert (Counsel for U.S. Department of Health and Human Services, Defendant).

15. Coberly, Linda T. (Counsel for UNOS).

16. Drezner, Michael (Counsel for U.S. Department of Health and Human Services, Defendant).

17. Emory University d/b/a Emory University Hospital (Plaintiff-Appellee).

18. Frey, Sara A. (Counsel for UNOS).

19. Fried, Frank, Harris, Shriver & Jacobson LLP (Counsel for Intervenors Susan Jackson and Charles Bennett).

20. Fruchter, Evelyn N. (Counsel for Intervenors Susan Jackson and Charles Bennett).

21. Gailey, Lauren (Counsel for UNOS).

22. Gordon Rees Scully Mansukhani, LLP (Counsel for UNOS).

23. Grisson, Katryna (Plaintiff-Appellee).

24. Henry Ford Health System (Plaintiff-Appellee).

25. Hinshelwood, Bradley (Counsel for U.S. Department of Health and Human Services, Defendant).

26. Hirose, Ryutaro, MD (Transplant Surgeon & Professor of Clinical Surgery, University of California, San Francisco, School of Medicine; Intervenors' expert in lower-court action).

27. Indiana University Health (Plaintiff-Appellee).

28. Jackson, Susan (Intervenor and Plaintiff in *Cruz v. U.S. Department of Health and Human Services*, U.S. District Court for the Southern District of New York, Case No. 1:15-cv-06371-AT).

29. Jones Day (Counsel for Plaintiffs-Appellees).

30. Krinsky, Glenn L. (Counsel for Plaintiffs-Appellees).

31. Lee, Melanie L. (Counsel for UNOS).

32. Levine, Emily Marcus (Counsel for U.S. Department of Health and Human Services, Defendant).

33. Lynch, Raymond J., MD (Transplant Surgeon, Emory University; Appellees' expert in lower-court action).

34. Majoras, John. M. (Counsel for Plaintiffs-Appellees).

35. McNeill, Deborah (Plaintiff in *Cruz v. United States Department of Health and Human Services*, U.S. District Court for the Southern District of New York, Case No. 1:15-cv-06371-AT).

36. Nourse, Robert (Plaintiff in *Cruz v. United States Department of Health and Human Services*, U.S. District Court for the Southern District of New York, Case No. 1:15-cv-06371-AT).

37. Oregon Health & Science University (Plaintiff-Appellee).

38. Organ Procurement and Transplantation Network (Defendant in *Cruz v. United States Department of Health and Human Services*, U.S. District Court for the Southern District of New York, Case No. 1:15-cv-06371-AT).

39.    Parrish, Matthew T. (Counsel for Intervenors Susan Jackson and Charles Bennett).

40.    Piedmont Healthcare, Inc. (Plaintiff-Appellee).

41.    Pollinger, Harrison, PhD (Program Director, Piedmont Transplant Institute; Appellees' expert in lower-court action).

42.    Robbins Ross Alloy Belinfante Littlefield, LLC (Counsel for Intervenors Susan Jackson and Charles Bennett).

43.    Rubinstein, Daniel D. (Counsel for UNOS).

44.    Saindon, Elizabeth H. (Counsel for U.S. Department of Health and Human Services, Defendant).

45.    Saint Luke's Hospital of Kansas City, a wholly owned subsidiary of Saint Luke's Health System (Plaintiff-Appellee).

46.    Schmitt, Timothy, MD, FACS (Former Councillor Reg. 8, UNOS/OPTN Board of Directors; Appellees' expert in lower-court action).

47.    Seaman, Candice (Plaintiff-Appellee).

48.    Shaw, Malay B., MD (Liver Transplant Surgeon, University of Kansas; Appellees' expert in lower-court action).

49. Sheridan, Kimberly C. (Counsel for UNOS).

50. Shulman, Motty (Counsel for Intervenors Susan Jackson and Charles Bennett).

51. Suber, Sean H. (Counsel for UNOS).

52. Taylor, Ryan M., MD (Transplant Hepatologist, University of Kansas; Appellees' expert in lower-court action).

53. Taylor, William R. (Counsel for Plaintiffs-Appellees).

54. Torres, Luis (Plaintiff in *Cruz v. United States Department of Health and Human Services*, U.S. District Court for the Southern District of New York, Case No. 1:15-cv-06371-AT).

55. Totenberg, The Honorable Amy (District Court Judge, U.S. District Court for the Northern District of Georgia).

56. United Network for Organ Sharing (Defendant-Appellant).

57. United States Department of Health and Human Services, through Alex M. Azar II in his official capacity as Secretary of HHS (Defendant).

58. United States Department of Justice, Federal Programs Branch (Counsel for U.S. Department of Health and Human Services, Defendant).

59. University of Iowa (Plaintiff-Appellee).

60. University of Kansas Hospital Authority d/b/a The University of Kansas Health System (Plaintiff-Appellee).

61. University of Kentucky (Plaintiff-Appellee).

62. University of Michigan, The Regents of (Plaintiff-Appellee).

63. University of Virginia, Rector and Visitors of (Plaintiff-Appellee).

64. Vanderbilt University Medical Center (Plaintiff-Appellee).

65. Virginia Commonwealth University Health System Authority (Plaintiff-Appellee).

66. Walto, Marilyn (Plaintiff in *Cruz v. U.S. Department of Health and Human Services*, U.S. District Court for the Southern District of New York, Case No. 1:15-cv-06371-AT).

67. Washington University (Plaintiff-Appellee).

68. Weber, Thomas G. (Counsel for UNOS).

69.    Wingate, Michael (Plaintiff-Appellee).

70.    Winston & Strawn LLP (Counsel for UNOS).

71.    Zhou, Grace X. (Counsel for U.S. Department of Health and Human Services, Defendant).

In addition, UNOS makes the following corporate statement pursuant to Federal Rule of Appellate Procedure 26.1: UNOS is a private non-profit corporation organized under the laws of the Commonwealth of Virginia.  UNOS operates under § 501(c)(3) of the Internal Revenue Code.  It has no parent corporation, and, as it has no stock, no publicly held company owns 10% or more of its stock.

No other associations of persons, and no other firm, partnership, corporation, or publicly traded company or corporation, owns 10% or more of any party's stock or has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Because this appeal is meritorious and oral argument would signifi-

cantly aid the decisional process, UNOS requests that this case be set for ar-

gument.  *See* Fed. R. App. P. 34(a)(2).

# GLOSSARY

This glossary is included for the Court's convenience, given the prevalence of acronyms in the record.  Where possible, this brief will use the full term (or a self-explanatory shorthand), rather than the acronym.

| ACRONYM | DEFINITION |
|---------|------------|
| ACOT | Advisory Committee on Organ Transplantation |
| APA | Administrative Procedure Act |
| DSA | Donor Service Areas |
| HHS | Department of Health and Human Services |
| MELD | Model for End-Stage Liver Disease |
| HRSA | HHS's Health Resources & Services Administration |
| NOTA | National Organ Transplant Act |
| OPTN | Organ Procurement and Transplantation Network |
| SRTR | Scientific Registry of Transplant Recipients |
| TRO | Temporary Restraining Order |
| UNOS | United Network for Organ Sharing |

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ...................................... C-1

STATEMENT REGARDING ORAL ARGUMENT............................................i

GLOSSARY ........................................................................... ii

TABLE OF CONTENTS .......................................................... iii

TABLE OF AUTHORITIES................................................................ vi

INTRODUCTION ...........................................................................1

JURISDICTIONAL STATEMENT .......................................................7

STATEMENT OF THE ISSUES ..........................................................8

STATEMENT OF THE CASE...............................................................9

    I.    UNOS adopted a new and improved policy for allo-
    cating livers ...........................................................................9

    II.    Plaintiffs sued to enjoin the policy, but the district
    court denied injunctive relief on their principal claim,
    and this Court affirmed ..................................................14

    III.    After a whirlwind discovery phase, the district court
    denied injunctive relief on the remaining counts.......................15

    IV.    The court excluded the private emails from the ad-
    ministrative record and did not consider them in re-
    solving any issue................................................................20

    V.    Despite their irrelevance, the court ordered the emails
    unsealed ..............................................................................22

SUMMARY OF THE ARGUMENT...................................................25

STANDARD OF REVIEW ................................................................29

ARGUMENT......................................................................................29

I.  The public has no presumptive interest in these irrele-
    vant emails ......................................................................... 31

    A.  The common-law right of access attaches to docu-
        ments that are "integral to the judicial resolution of
        the merits." ............................................................... 32

        1.  Under this Court's cases, whether a document
            is a "judicial record" depends on the role it
            plays in the court's decision ..................................... 32

        2.  The other circuits take the same functional ap-
            proach ..................................................................... 35

        3.  Litigants cannot transform discovery materi-
            als into "judicial records" just by filing them .......... 37

    B.  The emails at issue here played no role in the
        court's decision ........................................................... 38

        1.  The district court expressly declined to con-
            sider the emails in deciding the APA claim. ........... 40

            a.  Because UNOS is not an agency, the
                emails were neither part of the ad-
                ministrative record nor germane to
                the merits ........................................................ 40

            b.  If UNOS *were* an agency, the emails
                would have been protected from dis-
                closure and irrelevant to the court
                under the deliberative process privi-
                lege ................................................................. 42

        2.  The emails did not relate to the due process is-
            sue .......................................................................... 45

II. Even if the right of access applied, UNOS has shown
    good cause to keep the emails sealed ............................... 47

iv

A.     The district court gave too much weight to the public interest in these emails, which were irrelevant to any issue in the case and were both requested and filed for an improper purpose................................................48

B.     The district court gave no meaningful weight to the chilling effect of releasing these emails and the substantial harm it will cause to both public and private interests....................................................................................56

CONCLUSION ........................................................................................61

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ad Hoc Metals Coalition v. Whitman,*
    227 F. Supp. 2d 134 (D.D.C. 2002) ..................................................43, 44, 60

*Adventist Health System/Sunbelt, Inc. d/b/a AdventHealth Orlando,*
    *et al. v. U.S. Dep't of Health & Human Services and UNOS, et*
    *al.,* No. 20-101 (S.D. Iowa, Dec. 9, 2020) ...........................................54, 55, 56

*Broward Bulldog, Inc. v. U.S. Dep't of Justice,*
    939 F.3d 1164 (11th Cir. 2019) .........................................................................59

*Callahan v. U.S. Dep't of Health & Human Servs.,*
    434 F. Supp. 3d 1319 (N.D. Ga. 2020) .....................................................*passim*

*Callahan v. U.S. Dep't of Health & Human Servs.,*
    939 F.3d 1251 (11th Cir. 2019) .................................................................15, 16

*Callahan v. U.S. Dep't of Health & Human Servs.,*
    No. 19-1783, 2019 WL 3539815 (N.D. Ga. May 14, 2019)...........................15

*Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,*
    263 F.3d 1304 (11th Cir. 2001) .................................................................*passim*

*Cohen v. Beneficial Indus. Loan Corp.,*
    337 U.S. 541 (1949).............................................................................................8

*Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC,*
    918 F.3d 1161 (11th Cir. 2019) .................................................................*passim*

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
    532 U.S. 1 (2001)........................................................................................19, 58

*Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill,*
    443 U.S. 340 (1979)...........................................................................................59

*Fla. House of Representatives v. U.S. Dep't of Commerce,*
    961 F.2d 941 (11th Cir. 1992) ..........................................................................43

*FTC v. AbbVie Products LLC,*
    713 F.3d 54 (2013) ..............................................................*passim*

*FTC v. Standard Fin. Mgmt. Corp.,*
    830 F.2d 404 (1st Cir. 1987) .............................................35

*Ga. Aquarium, Inc. v. Pritzker,*
    134 F. Supp. 3d 1374 (N.D. Ga. 2014) ...........................60

*In re Application of United States for an Order Pursuant to*
    *18 U.S.C. § 2703(D),* 707 F.3d 283 (4th Cir. 2013) .......36

*Jove Eng'g, Inc. v. IRS,*
    92 F.3d 1539 (11th Cir. 1996) ...........................................29

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.,*
    998 F.2d 157 (3d Cir. 1993) ...............................................38

*Moye, O'Brien, O'Rourke, Hogan & Pickert v. Nat'l R.R. Passenger*
    *Corp.,*
    376 F.3d 1270 (11th Cir. 2004) .........................................45

*N. Jersey Media Grp. Inc v. United States,*
    836 F.3d 421 (3d Cir. 2016) ...............................................36

*Newman v. Graddick,*
    696 F.2d 796 (11th Cir. 1983) ...........................................48

*Newsday LLC v. County of Nassau,*
    730 F.3d 156 (2d Cir. 2013) .................................36, 37, 38

*Nixon v. Warner Commc'ns, Inc.,*
    435 U.S. 589 (1978)..........................................................31, 51

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975)....................................................................57

*Perez-Guerrero v. U.S. Att'y Gen.,*
    717 F.3d 1224 (11th Cir. 2013) .........................................47

*Plaintiff B v. Francis,*
  631 F.3d 1310 (11th Cir. 2011) ................................................................8

*Romero v. Drummond Co.,*
  480 F.3d 1234 (11th Cir. 2007) ........................................................*passim*

*San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n,*
  751 F.2d 1287 (D.C. Cir. 1984) ..............................................................60

*Seattle Times Co. v. Rhinehart,*
  467 U.S. 20 (1984) ...................................................................................38

*Trump v. Deutsche Bank AG,*
  940 F.3d 146 (2d Cir. 2019) ...................................................................35

*U.S. Dep't of Justice v. Julian,*
  486 U.S. 1 (1988) .....................................................................................59

*United States v. Amodeo,*
  71 F.3d 1044 (2d Cir. 1995) ...................................................................33

*United States v. Amodeo,*
  44 F.3d 141 (2d Cir. 1995) .....................................................................36

*United States v. El-Sayegh,*
  131 F.3d 158 (D.C. Cir. 1997) ...............................................................36

*United States v. Kravetz,*
  706 F.3d 47 (1st Cir. 2013) ....................................................................36

*United States v. Miller,*
  775 F. App'x 974 (11th Cir. 2019) .........................................................49

**Statutes**

Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ...............................*passim*

28 U.S.C. § 1291 ...........................................................................................8

28 U.S.C. § 1331 ...........................................................................................7

National Organ Transplant Act, 42 U.S.C. § 274 ....................................9, 11, 40

## Court Rules

Fed. R. Civ. P. Rule 4(a)(1) ..................................................................................24

Fed. R. Civ. P. Rule 10(c) ....................................................................................33

## Regulations

42 C.F.R. § 121.3(a) ..............................................................................................11

42 C.F.R. § 121.4(b) .........................................................................................14, 15

64 Fed. Reg. 56,650 (Oct. 20, 1999) ....................................................................12

## Other Authorities

8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND
    PROCEDURE (2d ed. 1994) ...............................................................................49

OPTN, *OPTN Strategic Plan 2018-2021* (Jun. 12, 2018),
    https://optn.transplant.hrsa.gov/me-
    dia/2546/optn_unos_strategic_plan.pdf .......................................................9

## INTRODUCTION

This appeal concerns an order of the district court that will unseal a series of private emails that Plaintiffs filed with the court despite a complete lack of relevance to their claims. The court specifically declined to consider these emails in resolving the issues before it. Nonetheless, because the emails were filed as attachments to a brief, the court held that they necessarily fall within the public's right of access, and it refused to give sufficient weight to the good cause that supports keeping them sealed. As discussed below, both of these conclusions were error. Indeed, the good cause is even more apparent today than it was then. Since the court's ruling, Plaintiffs have confirmed what UNOS has argued all along: that their real motive for unsealing these emails is to use them in a campaign to impose their own policy agenda, both in the courts and through public scrutiny of those who disagree. Just two weeks ago, they attempted to use the sealed emails for their own business advantage in new litigation.

These issues arise out of an administrative law dispute that has been before this Court once before—a challenge to a new policy for allocating organs for transplant. Donated organs are a rare and limited resource, and allocating an organ to one patient necessarily means that another patient

will be left waiting.  Developing allocation policies is a daunting task that requires extensive scientific and statistical analysis and a careful balancing of practical, logistical, and equitable considerations.

Years ago, Congress made the choice to entrust this sensitive task to the transplant community itself, to be carried out by a non-profit organization representing every aspect of that community.  To accomplish this, the Department of Health and Human Services (HHS) entered into a contract with UNOS (the appellant here), a non-profit organization that provides a forum for the development of policies and manages the logistics of the allocation.  The power to adopt new policies sits with UNOS's Board, the voting members of which are all volunteers from across the transplant community.  The policies the Board adopts are the product of a collaboration among those with the deepest knowledge of organ transplantation—both medical and technical expertise (physicians, transplant hospitals, and experts in organ procurement and transplantation) and firsthand experience (patients, donors, and families).

Two years ago, this collaborative process produced a new policy for allocating livers. Replacing an outdated and unlawful policy that used arbitrary geographic boundaries, the new "Acuity Circles Policy" directs livers toward the sickest patients within a certain radius of the donor.

Not everyone was happy with this change. Some transplant hospitals had fared better financially under the old policy, so they raised objections to the proposed Acuity Circles Policy during the public comment period. Their arguments failed to carry the day at that time; they were simply outvoted. Undaunted, these hospitals—along with four patients who believed the new policy would delay their transplants (collectively, "Plaintiffs," the appellees here)—sued UNOS and HHS to enjoin the policy's implementation. The suit raised claims under the Administrative Procedure Act (APA) and the Due Process Clause.

These claims have failed at every turn. First, the district court refused to grant a temporary restraining order or preliminary injunction, rejecting Plaintiffs' principal claim that the regulations required the policy to go through additional procedural steps, including publication in the Federal Register. On appeal, this Court affirmed, agreeing with UNOS and

HHS that no such requirement existed. Then, after a remand to consider the remaining claims—in which the district court allowed expedited discovery—the court again denied Plaintiffs' request for a preliminary injunction. It issued a 100-page opinion, holding that UNOS is not an "agency" for purposes of the APA, that neither the Acuity Circles Policy itself nor HHS's related directives are arbitrary and capricious, and that Plaintiffs had been afforded any process due under the Constitution. This ruling effectively foreclosed Plaintiffs' claims on their merits. Nonetheless, Plaintiffs have delayed the entry of final judgment, insisting that the parties proceed with summary judgment briefing and recently requesting a lengthy extension to file their opposition brief. (As it turns out, the purpose of that extension was apparently to enable them to pursue the same claims elsewhere.)

Just one day after the district court's ruling gutted their claims, Plaintiffs moved to unseal a crop of private emails to and from UNOS volunteers—emails that Plaintiffs had obtained in discovery under a court order protecting their confidentiality and tacked onto a supplemental brief in support of their motion for a preliminary injunction. The brief referenced

these emails mostly in footnotes irrelevant to the legal and factual arguments.  The court correctly excluded these emails from the administrative record and deemed them irrelevant to its decision.  At Plaintiffs' request, however, the court concluded that it had no choice but to unseal them.

This conclusion reflects both legal error and an abuse of discretion. First and foremost, the unsealing order rests on a faulty premise: that just because the emails were filed with the court as attachments to a brief, the public necessarily has an interest in their contents.  Not so.  This Court and its sister circuits have held that the public's right of access focuses on information that plays a part in the court's disposition of the issues.  The public right of access does *not* extend to extraneous discovery documents tacked onto a court filing.

Second, even if the public had a presumptive right of access, the court must engage in a serious analysis of whether good cause requires keeping the documents sealed.  Here, the district court's good-cause analysis overvalued the public interest in the emails—ignoring their irrelevance, the circumstances of their production, and Plaintiffs' improper purpose in seeking and unsealing them—and undervalued the demonstrated interests

of both UNOS and the public in keeping them sealed. The effect of unsealing these private communications to and from UNOS volunteers would be to expose, criticize, and embarrass anyone who has a view of the merits of circle-based allocation policies that differs from Plaintiffs' view. This would have serious consequences. Debate would be chilled, the policy-development process would be impaired, and the doctors and other professionals who volunteer their time at UNOS would be intimidated into silence. For this very reason, in fact, courts in APA cases hold that policy-related communications like these are covered by a deliberative process privilege.

This chilling effect appears to be Plaintiffs' true goal. At this very moment, other policy discussions are ongoing in which the Plaintiff hospitals have a vested interest. Indeed, just two weeks ago, the same counsel and several of the same Plaintiffs brought another federal lawsuit against HHS and UNOS to enjoin another new transplant policy. That lawsuit—filed in another jurisdiction, undoubtedly to avoid this Court's and the district court's rulings on the merits of their claims—includes references to the sealed emails, baselessly suggesting that they show "corruption" in

UNOS's collaborative process.  Plaintiffs have even urged the court in that case to review the emails *in camera*, in derogation of the district court's orders here.

This Court should remind Plaintiffs—and others who would attempt to use a court's docket as a tool to embarrass and silence those who disagree with them—that such tactics are not tolerated in the Eleventh Circuit. Under this Court's cases, irrelevant documents are *not* subject to the public right of access, and UNOS has shown good cause to keep these documents sealed in any event.

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. § 1331.  UNOS timely appealed on October 20, 2020.  *See* ECF 299.[1]

At the outset of this appeal, the Court ordered the parties to address "whether the [order] to unseal certain documents is immediately appealable under the collateral order doctrine."  As explained in greater detail in the responses of both parties and an amicus curiae (all filed December 1,

---

[1] ECF page numbers refer to the pagination in the header applied by the CM/ECF system.

2020), this Court has appellate jurisdiction over this interlocutory appeal under 28 U.S.C. § 1291 and the collateral order doctrine, because the unsealing order is collateral to the merits, disposed of the unsealing issue completely, and is the type of order that would be effectively unreviewable after final judgment. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–46 (1949); *Romero v. Drummond Co.*, 480 F.3d 1234 (11th Cir. 2007); *Plaintiff B v. Francis*, 631 F.3d 1310, 1314 (11th Cir. 2011).

## STATEMENT OF THE ISSUES

1.      Did the district court err as a matter of law in concluding that a presumptive right of public access applies to private emails that were filed as attachments to a supplemental brief but played no role in the district court's resolution of the issues?

2.      Did the district court abuse its discretion in holding that UNOS had not shown good cause to keep private emails under seal, despite their irrelevance to any issue in the case, Plaintiffs' improper purpose and tactics in seeking them, the application of the deliberative process privilege in this APA case, and the chilling effect that disclosure would have on important policy deliberations?

## STATEMENT OF THE CASE

**I.  UNOS adopted a new and improved policy for allocating livers.**

In the National Organ Transplant Act of 1984, 42 U.S.C. § 274, Congress directed the Secretary of HHS to "provide for the establishment and operation" of an Organ Procurement and Transplant Network (OPTN) responsible for identifying medical criteria for allocating organs, implementing an allocation system, and "assist[ing] . . . in the nationwide distribution of organs equitably."  *Id.* § 274(a), (b)(2)(d).  HHS was to establish the OPTN by contracting with a "private nonprofit entity that has an expertise in organ procurement and transplantation."  *Id.* § 274(b)(1)(A).

For almost four decades, UNOS has been privileged to serve as the OPTN.  ECF 1-2.  UNOS furthers its mission of promoting "organ availability and transplantation . . . for the benefit of patients through education, technology, and policy development."  OPTN, *OPTN Strategic Plan 2018-2021* (Jun. 12, 2018), https://optn.transplant.hrsa.gov/media/2546/optn_unos_strategic_plan.pdf.  On a day-to-day basis, UNOS manages the national transplant waiting list, maintaining the database of all organ transplant data for the United States and matching donors to re-

cipients.  In order to make optimal—and equitable—use of the limited sup-

ply of organs, UNOS also provides a forum for the development of alloca-

tion policies to guide the process of matching organs with transplant pa-

tients.  The policies are then implemented by way of a computer system

and algorithms that carry out the matching process.

Allocation policies are shaped by the OPTN's members, who also

agree to abide by them.  These members include every transplant hospital

and organ-procurement organization in the country.  They also include

non-profit foundations and professional organizations in the field, as well

as ethicists, members of the general public, transplant patients, and mem-

bers of donors' families.  Members participate in the decision-making pro-

cess by commenting on proposed policies and by having representatives on

committees and the Board.

The OPTN's committees specialize in different areas of transplanta-

tion and make recommendations to the Board.  ECF 34-15 at 4–5.  By regu-

lation, the Board's membership must include broad representation from

across the community, including representatives from transplant centers

(including several plaintiff hospitals, ECF 124-1) and organ procurement

organizations; physicians; candidates, donors, and recipients; lawyers; and ethicists. 42 U.S.C. § 274(b)(1)(A); 42 C.F.R. § 121.3(a)(1)(i)–(iii). Three non-voting *ex officio* seats are reserved for representatives of HHS. ECF 34-15 at 4. UNOS's chief executive officer also sits on the Board, but he too is not a voting member.

Two years ago, the Board authorized a new policy to govern the allocation of donated livers. Historically, the OPTN's policy was generally to allocate livers within defined geographical Donation Service Areas (DSAs), with priority assigned based on patients' relative medical need, as quantified by a risk-assessment metric called a "MELD score." ECF 1 at 30–34. Importantly, the boundaries of the DSAs were set for administrative ease based on the historical service areas of the various organ procurement organizations around the country, tracing back to a time before Congress envisioned a national system. The DSAs were *not* designed to minimize the distance or time donated organs would be in transit. ECF 35-2 at 10–13. As a result, under the DSA-based policy, organs sometimes had to travel greater distances to reach patients who were less urgently in need. For this reason, DSAs have long been controversial.

Years ago, UNOS began to study an alternative to the DSA-based policy for distributing livers.  *See* ECF 34-15 at 5.  In 2018, after a group of patients filed a "critical comment" with HHS and a lawsuit challenging the DSA-based liver policy, HHS and the OPTN initiated a formal review.  *See* Intervenors' Resp. Br. at 21 & n.2, No. 19-11876 (11th Cir. 2019) (citing ECF 1-7).  HHS concluded that the DSA-based policy did not comply with the regulatory requirement to avoid "arbitrary geographic barriers to alloca-tion that restrict the allocation of organs to patients with greatest medical urgency . . . and that are not based on medical criteria."  64 Fed. Reg. 56,650, 56,651 (Oct. 20, 1999) (Final Rule).  In a letter issued in July 2018, HHS instructed the OPTN to develop and adopt "a liver allocation policy that eliminates the use of DSAs and Regions" in time for its December 2018 Board meeting.  ECF 34-1 at 4, 6.

UNOS's Liver Committee developed two possible replacements—the Acuity Circles model, and the "Broader 2 Circle" model.  These models both used distance-based circles rather than DSAs, though the latter model gave less priority to candidates located farther away from the donor, even

with greater medical urgency.  ECF 34-4 at 122–26.  The committee published both models online, as well as a comparative statistical analysis prepared by an independent HHS contractor (the Scientific Registry of Transplant Recipients), and received more than 1,240 comments for review and discussion.  ECF 34-4 at 119.

By a narrow 11–9 vote, the Liver Committee decided to recommend the Broader 2 Circle model to the UNOS Board.  ECF 1-15 at 7.  After reviewing an extensive set of materials analyzing both models, however, the Board voted 30–7 to adopt the Acuity Circles Policy, concluding that it would result in fewer waitlist deaths and ensure that livers were allocated more equitably.  ECF 34-3 at 9–16.

Plaintiff hospitals had submitted a total of twenty comments critical of the Acuity Circles Policy during the public comment period (ECF 34-14), and they proceeded to submit another critical comment to HHS in February 2019, asking that it "suspend [the policy's] implementation."  ECF 1-13 at 20.  Ultimately, HHS exercised its discretion to take no further action with respect to the critical comment.  ECF 34-2.

**II.    Plaintiffs sued to enjoin the policy, but the district court denied injunctive relief on their principal claim, and this Court affirmed.**

Just eight days before the policy was to go into effect in May 2019, the Plaintiff hospitals—joined by four patients who believed their transplants would be delayed under the Acuity Circles Policy—sued UNOS and HHS to enjoin its implementation.  ECF 1.  Another group of transplant patients intervened to support the policy; this was the same group that had filed the lawsuit and critical comment in 2018 that spurred the development of a new policy without DSAs.  ECF 18; ECF 18-1.

Plaintiffs' complaint asserted three claims: (1) that the adoption of the policy failed to comply with procedural steps prescribed by HHS regulations; (2) that the adoption of the policy was arbitrary, capricious, and otherwise not in accordance with the law, in violation of the APA; and (3) that Plaintiffs had been deprived of due process in violation of the Fifth Amendment.  ECF 1 at 81–91.

The district court denied Plaintiffs' motion for a temporary restraining order and preliminary injunction, focusing on the first APA count, which alleged that HHS was obligated under 42 C.F.R. § 121.4(b) to take certain procedural steps (e.g., publishing the policy in the Federal Register)

before allowing the policy to go into effect. *See Callahan v. U.S. Dep't of Health & Human Servs.*, No. 19-1783, 2019 WL 3539815, at *4 (N.D. Ga. May 14, 2019). The district court concluded that those steps were not required, in deference to HHS's reading of the regulation. *Id.*

This Court affirmed, "arriv[ing] at [the same] conclusion by a different route." *Callahan v. U.S. Dep't of Health & Human Servs.*, 939 F.3d 1251, 1259 (11th Cir. 2019). This Court reasoned that deference was unnecessary, as HHS's and UNOS's "interpretation of [the text of] § 121.4(b) [wa]s demonstrably superior to plaintiffs'." *Id.* at 1262, 1265. The case was remanded so the district court could decide "in the first instance" whether Plaintiffs were entitled to a preliminary injunction in relation to their "remaining claims—their APA-based arbitrary-and-capricious claim and their Fifth Amendment Due Process claim." *Id.* at 1266.

### III. After a whirlwind discovery phase, the district court denied injunctive relief on the remaining counts.

Relying on this Court's observations that the remaining claims would "likely turn on fact- and context-intensive questions"—beginning with whether UNOS is "an 'agency'" for APA purposes (*Callahan*, 939 F.3d at 1265)—the district court concluded (over UNOS's objection) that this Court

had directed it to conduct "additional fact finding." *Callahan v. U.S. Dep't of Health & Human Servs.*, 434 F. Supp. 3d 1319, 1328 (N.D. Ga. 2020). This "presented a 'cart before the horse' problem" for the district court, as both the "boundaries of the [administrative] record" and the merits of the remaining APA claim "depend[ed] in part on the premise that [UNOS] constitutes an 'agency.'" *Id.* at 1338 (quoting *Callahan*, 939 F.3d at 1265). At the same time, however, the district court recognized that its review of the remaining APA claim would be limited to that as-yet-undefined "administrative record, absent bad faith." *Id.* at 1355.

To navigate this Catch-22, the court "endeavored through several orders to ensure that [UNOS and HHS] compiled a complete administrative record" (*id.* at 1338) and—separately—permitted discovery related to the question whether UNOS was an agency. ECF 298 at 2. Further, "in the event . . . that UNOS *was* an agency or state actor," the court also saw a need, in the interest of time, to allow Plaintiffs "to expand the scope of discovery to include UNOS communications . . . that could potentially bear on bad faith or predetermination," because a finding of bad faith or predetermination could provide a basis for expanding the administrative record for

16

the APA claim.  *Id.* (emphasis added).  This discovery was entirely one-sided; there was no discovery focused on Plaintiffs themselves.

In the course of just a few weeks in late 2019, UNOS worked around the clock to review and produce thousands of documents.  The court later acknowledged that UNOS was under "tremendous pressure to comply with discovery requests under an extremely [con]tracted timeline."  *Id.* Among other things, it produced a variety of documents relative to UNOS's role and contract with HHS.

At the same time, UNOS attempted to fend off Plaintiffs' efforts to expand the scope of discovery even further.  Relevant here, on November 18, 2019, UNOS objected to Plaintiffs' requests for private emails among UNOS employees and volunteers.  ECF 168.  Plaintiffs had served requests for production (Requests 11 and 12) that called for communications "between New York-Affiliated Individuals [defined to be related to the intervenors and their counsel] and Key . . . Personnel [of HHS's Health Resources & Services Administration (HRSA) and UNOS, respectively] regarding liver allocation policy."  ECF 149-1 at 11.  Plaintiffs' only proffered

justification for this discovery was to "show that any agency action was undertaken 'in bad faith or with an unalterably closed mind'" that favored the New York-based hospitals.  ECF 168 at 3 (quoting letter from Plaintiffs' counsel); ECF 171 at 5–6.

After UNOS objected, the court instructed Plaintiffs to narrow their requests by providing more guidance on the definition of "New York-Affiliated."  ECF 166 at 4.  Instead, Plaintiffs *expanded* their requests by defining the category "New York-Affiliated" to include three specific UNOS volunteers, none of whom actually had any actual "New York" affiliation.  ECF 171-2 at 2–3.

UNOS promptly objected to this expanded discovery, and Plaintiffs moved to compel.  In its opposition, UNOS argued that in their attempt to suggest an improper and collusive relationship between UNOS and the New York-based intervenors, Plaintiffs had mischaracterized the UNOS volunteers targeted by these requests as "New York-affiliated" when they plainly were not.  ECF 172 at 6–9.  The court granted Plaintiffs' motion to compel without addressing this argument.  ECF 187.

UNOS was left with only a few days to gather and review thousands of emails, and it worked around the clock (and over the Thanksgiving holiday) to do so. During this review, UNOS discovered that some of the emails related to policymaking within the OPTN. As a result, even if the court answered the threshold question in Plaintiffs' favor—concluding that UNOS *was* an agency—those emails would be protected from discovery by the "deliberative process privilege," which protects "open and frank discussion" among agency decisionmakers. ECF 213-1 at 3–4 (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001)). On the first business day after discovering this, UNOS provided Plaintiffs with a detailed explanation of its basis for asserting the privilege over a subset of the documents, and it proceeded to produce the rest. *Id.*

Plaintiffs then filed a second motion to compel. ECF 213. The district court granted the motion, holding that UNOS had waived the privilege for purposes of discovery by not asserting it earlier—before UNOS had reviewed the documents—and "permit[ting Plaintiffs to file] additional briefing [in support of a preliminary injunction] as a sanction." ECF 233 at 3–5; ECF 298 at 3. Recognizing the confidentiality concerns, however, the court

expressly "RESTRICT[ED] the responsive documents to the Parties and court users only." *Id.* at 5.

In compliance with that order—and specifically invoking the court's order that they be kept confidential—UNOS produced the emails it had withheld on the basis of the deliberative process privilege. Plaintiffs promptly filed them with the court under seal, as attachments to their supplemental brief. ECF 248-1 (redacted), 249-1 (unredacted). Importantly, however, the text of the supplemental brief referenced only a few of the emails—and those mentions were mostly in footnotes unrelated to the above-the-line text. ECF 248 (redacted), 249 (unredacted). From the content of the emails and the manner in which the brief addressed them—or, as the case may be, *failed* to address them—it was apparent that they had been injected into the district court record not for any legitimate legal purpose, but to embarrass the emails' authors and subject their communications to public scrutiny. ECF 248, 248-1, 249, 249-1.

## IV. The court excluded the private emails from the administrative record and did not consider them in resolving any issue.

After extensive briefing and oral argument, the district court denied Plaintiffs' renewed motion for a preliminary injunction. *Callahan*, 434 F.

Supp. 3d at 1352.  In a 100-page opinion, the court held that UNOS is not an "agency," so its own actions are not subject to challenge under the APA. *Id.* at 1352.  Further, and in any event, the court held that the process of adopting the Acuity Circles Policy was not "arbitrary and capricious" under the APA.  *Id.* at 1371.  And finally, the court held that Plaintiffs had not been denied due process, having received all the process this Court had interpreted the applicable regulations to require.  *Id.* at 1373.  The substance of the district court's ruling eviscerated Plaintiffs' case.

In so holding, the court declined to rely on any of the emails Plaintiffs had attached to their supplemental brief.  Plaintiffs had not argued—and the court did not consider—the emails in connection with the questions whether UNOS is an agency (*id.* at 1340–52) and whether Plaintiffs had been deprived of due process (*id.* at 1371–73).  And as to the APA claim, the court recognized that it would be inappropriate to include such "deliberative communications" in the administrative record, noting that it had held the "deliberative process privilege waived by UNOS *for the purpose of discovery*" only.  *Id.* (emphasis by the district court).

Further, there was no reason to believe that the decisionmakers at HHS had these emails before them in connection with HHS's final agency action. *Id.* at 1364. The court expressed a view that some emails showed "colorable evidence of animosity and even some measure of regional bias against transplant community professionals who advocated for continued use of DSAs or Regions," in that the emails "show[ed] that some of these major players within the transplant community had an agenda and strongly held views of new allocation policies (i.e., Acuity Circles) that aligned with their locations and institutional interests." *Id.* But the court also reasoned (correctly) that Plaintiffs had "fail[ed] to tie any of this alleged misconduct to HHS," the only agency involved for purposes of the APA. *Id.* For this reason as well, "these [email] conversations [we]re not properly part of the administrative record." *Id.*

## V. Despite their irrelevance, the court ordered the emails unsealed.

Just one day after the ruling on the preliminary injunction, Plaintiffs moved to unseal the emails and the portions of the briefs discussing them. ECF 263. UNOS opposed this motion on the grounds that the emails were irrelevant and "played no role" in the court's decision, and that unsealing the emails would hinder "robust and frank debate" at UNOS by "creating a

fear that any private communications . . . could ultimately be published to the writers' colleagues, employers, potential future employers, business competitors, the public, and the press."  ECF 268 at 2.  UNOS supported this position by citing an uncontroverted declaration from its CEO.  *Id.* at 5–6 (citing ECF 223).

In a September 29, 2020 order, the district court explained that it "sympathize[d] with UNOS's argument that unsealing the [emails] would chill open deliberations" and acknowledged that the emails "did not reveal much in the way of [improper] coordination with Intervenors" or "any bad faith, bias, or predetermination that could be traced to HHS's ultimate decision-making."  ECF 298 at 3, 8.  The court also acknowledged that the emails "are not part of the administrative record" that underlies the claim under the APA.  *Id.* at 8.

Ultimately, though, the court reasoned that the emails "are part of the court record for other purposes," and that the chilling effect on policy debate within UNOS did not "overcome the presumptive public interest" in access to court filings.  *Id.*  The court dismissed UNOS's concerns that Plaintiffs had obtained the emails under false pretenses and were acting

"out of a desire to harm their ideological opponents," stating only that keeping the documents sealed would not be "a proper sanction for misconduct." *Id.* at 9. With the exception of a few limited categories of information, the court granted the motion to unseal. *Id.* at 9, 17, A-i to -iv.

The court ordered the clerk not to unseal the emails (and Plaintiffs not to disclose their contents) "until [at least] three business days after this Order becomes non-appealable." *Id.* at 10. Faced with an ambiguity as to when, in the district court's view, the unsealing order would no longer be appealable, UNOS reviewed the case law of this Court and others and concluded that the order was immediately appealable under the collateral order doctrine. *See* UNOS Resp. to Jurisdictional Question, No. 20-13932 (11th Cir. Dec. 1, 2020). UNOS filed this interlocutory appeal on October 20, well within the thirty days generally allowed under Appellate Rule 4(a)(1)(A) (and also within the sixty days allowed under Rule 4(a)(1)(B) when the government is a participant). *See* ECF 299.

In an abundance of caution, UNOS moved for and was granted a stay of enforcement of the unsealing order pending this appeal. ECF 300, 310.

The defendants have since moved for summary judgment on all remaining claims, and those motions remain pending.  ECF 307–09.

At issue before this Court is whether the district court was wrong as a matter of law that the presumption of public access applied, and whether it abused its discretion in finding insufficient good cause to keep the emails sealed.  *See Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1165 (11th Cir. 2019).

## SUMMARY OF THE ARGUMENT

In unsealing the UNOS emails, the district court made two major errors: (1) it concluded—after a cursory analysis applying an outdated legal standard—that they were "judicial records" that the public presumptively had a right to access; and (2) it found insufficient "good cause" to keep the emails under seal despite the public's interest.

1.      Under the correct standard, these emails were not "judicial records" subject to the presumption of public access at all.  The district court assumed that filing the emails in conjunction with a substantive motion is enough, but this Court recently made clear that more is required: to be considered a "judicial record," a document must be "integral to the judicial

resolution of the merits." *Advance Local Media*, 918 F.3d at 1165, 1167. Under the "more refined approach" used by this Court and its sister circuits (*id.* at 1168), simply tacking a discovery document onto a filing does not convert it into a judicial record presumed to be accessible to the public. *Id.* at 1167. The document must help the public understand why the court made the decisions it did.

The emails at issue here do not do this, as they played no role in the district court's consideration of any of the three major issues that remained in this case following remand: (1) the threshold question whether UNOS was an agency, (2) the merits of the APA claim, and (3) the merits of the due process claim. Notably, although discovery had been allowed only as to the threshold question of "agency status," Plaintiffs never argued that their pursuit of private emails involving UNOS volunteers had anything to do with whether UNOS was an "agency" for purposes of the APA. And ultimately, the district court did not consider the emails (or any other discovery) in its analysis of the threshold "agency" question.

The district court correctly held that UNOS was not an agency, and that the emails—which were "deliberative" and were not before HHS in

the context of its own final agency action—could not be part of the administrative record. The emails thus had nothing to do with the "judicial resolution" of the APA claim. Nor did they bear on the due process claim; the district court resolved that claim on its merits in UNOS's and HHS's favor, holding that Plaintiffs had been granted all the "process" they were "due" under the regulations. In short, the emails did not play any part in the court's consideration.

Because the emails were not relevant to the issues before the court and were not used to resolve them, they were not "judicial records" for purposes of *Advance Local Media*, and no public right of access attached.

2.      Even if the presumption of public access did apply, the district court's analysis of whether there was good cause to keep the documents sealed was beset by a number of errors in balancing the public interest in access against the interests favoring continued sealing.

To begin with, too much weight was given to the public's interest in access to judicial records in this instance, as the UNOS emails are not relevant to the issues in this case for the reasons discussed above. Further, the public's interest is diminished in light of the improper tactics Plaintiffs

used to discover these documents and the improper purpose for which they seek to unseal them. Such an improper purpose relates directly to the "good cause" inquiry itself. UNOS's arguments on those points may not be set aside as if they merely sought a separate sanction for bad conduct.

At the same time, the district court did not afford any meaningful weight to the interests on the opposite side of the scale. Although the court rightly acknowledged the concern that disclosing private emails involving UNOS volunteers will have a chilling effect on policymaking, it discarded that concern in the face of what it believed was the public right of access. It also ignored the harm to both UNOS and the public. In all of these respects, the court abused its discretion.

In this context, the public interest in accessing judicial records (if any) is weak, and the showing of good cause is strong. UNOS amply demonstrated that chilling frank discussion will harm not only the affected individuals but UNOS itself, as the community's forum for policymaking. And beyond that, hindering development of the best possible organ-allocation policy will harm the public as well. The sealed court documents should remain under seal.

## STANDARD OF REVIEW

"Whether a document is a 'judicial record' subject to the common law right of access is a question of law [this Court] review[s] de novo." *Advance Local Media*, 918 F.3d at 1165.

An unsealing order itself is reviewed for abuse of discretion. *Id.* "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001). An abuse of discretion also occurs when the court "misconstrues its proper role, ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support." *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1546 (11th Cir. 1996) (quotation omitted).

## ARGUMENT

The public's presumptive common-law "right of access to judicial proceedings"—including its "right to inspect and copy public records and documents"—"is not absolute." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007). The right of access does not apply automatically to all documents filed with the court. And where it *does* apply, it may be

overcome by a showing of good cause. These two analyses—(1) whether the public indeed has a right of access to the documents at issue, and (2) if so, whether on balance there is good cause to keep them sealed notwithstanding that right—are separate and distinct.

The district court, however, muddled them together. It merely assumed that the UNOS emails were "judicial records" because they had been filed as attachments to a brief, even though it acknowledged elsewhere that they played no role in its decision. This led it to conclude, incorrectly, that the public had a right of access to these irrelevant documents. This conclusion conflicts with this Court's cases, which define "judicial records" to be materials "integral to the court's resolution of the substantive motions." *Advance Local Media*, 918 F.3d at 1166. The court then compounded that error in its good-cause analysis, improperly tilting the balance of factors by assigning too much weight to the public interest in these irrelevant emails and *no* weight to the harm that unsealing the emails will cause.

This Court should reverse and hold that the court filings that contain the confidential emails filed with the court (and the portions of the briefs that refer to their contents) must remain sealed.

## I.     The public has no presumptive interest in these irrelevant emails.

The public has "a general right to inspect and copy public records and documents, including judicial records and documents," which includes a "presumptive[] . . . right to access judicial records." *Advance Local Media*, 918 F.3d at 1166 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).  Importantly, however, not every filed document is a judicial record.  This is a question of law (*id.* at 1165), and the district court here resolved it incorrectly, holding that "while the challenged documents are not part of the administrative record, . . . they are part of the court record for other purposes" and therefore "presumptively subject to the common law right of access."  ECF 298 at 8.  The court's legal error is enough by itself to require reversal.

**A.** **The common-law right of access attaches to documents that are "integral to the judicial resolution of the merits."**

The district court's first error was that it applied the wrong standard in analyzing whether the emails were "judicial records" to which the public has a right of access. It simply took for granted that "[t]he public has a presumptive right to review and copy documents *filed with the courts in civil proceedings*." ECF 298 at 4 (emphasis added) (citing *Chicago Tribune*, 263 F.3d at 1311). This reads the Court's precedent far too broadly and ignores twenty years of subsequent developments in the case law.

**1.** **Under this Court's cases, whether a document is a "judicial record" depends on the role it plays in the court's decision.**

In the two decades since *Chicago Tribune* was decided, this Court has honed its definition of what is and is not a "judicial record," shifting increasingly toward a functional approach.

In *Chicago Tribune*, the Court settled a longstanding question: for a document to be considered a judicial record, filing was not necessary. 263 F.3d at 1312. Nor, however, was it *sufficient*. Instead, the Court instituted "a more refined approach," announcing the rule that "material filed with discovery motions is not subject to the common-law right of access,

whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits"—there, a motion for summary judgment—"is subject to the common-law right." *Id.*

Six years later, this Court clarified in *Romero* that the motion at issue need not be dispositive; "any substantive pretrial motion" could be subject to the right of access—as long as it had been "presented to the court to invoke its powers or affect its decisions." 480 F.3d at 1245–46 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)).

This Court revisited the judicial-record analysis in *FTC v. AbbVie Products LLC*, where the question was whether a complaint and its attachments (deemed part of the complaint by Civil Rule 10(c)) were judicial records. 713 F.3d 54, 62–63 (11th Cir. 2013). The Court explained that "whether a document is a judicial record depend[s] on the type of filing it accompanied," and "[a] complaint and its exhibits, which are integral to the 'judicial resolution of the merits' of any action, are surely 'subject to the common-law right.'" *Id.* at 64 (quoting *Chicago Tribune*, 263 F.3d at 1312).

Another six years passed before this Court clarified the test again, in its most recent precedent, *Advance Local Media*. There, the Court held that

in deciding whether "materials submitted by litigants" are "judicial rec-ord[s] subject to the common law right of access," the proper test is whether they are "integral to the 'judicial resolution of the merits.'"  918 F.3d at 1167 (quoting *AbbVie Products*, 713 F.3d at 64 (in turn quoting *Chicago Tribune*, 263 F.3d at 1312)).  Though the document in question in *Advance Local Media* had not been "formally filed," it was still a "judicial record subject to the common law right of access because it was submitted to the district court to resolve disputed substantive motions in the litigation, was discussed and analyzed by all parties in evidentiary hearings and ar-guments, and was unambiguously integral to the court's resolution of the substantive motions."  *Id.* at 1168.  The document—the state's protocol for executions—was clearly at the heart of the suit challenging it.  *Id.*

At the same time, this Court explained that "[t]he mere filing of a document does not transform it into a judicial record."  *Id.* at 1167.  Unlike "materials that invoke judicial resolution of the merits," the public interest is not furthered by documents that are "irrelevant to the underlying is-sues," like "the overwhelming majority of documents disclosed during dis-covery."  *Id.* at 1168 (quoting *AbbVie Products*, 713 F.3d at 63) (cleaned up).

By emphasizing the role the document played in the resolution of the issues, *Advance Local Media* confirmed that the "judicial record" analysis boils down to the central theme running through the entire body of case law: whether a document is subject to the public's right of access depends on the document's relationship to the court's decision on a disputed issue.

### 2. The other circuits take the same functional approach.

Other federal courts of appeals have also recognized that "*relevant* documents which are submitted to, and accepted by, a court . . . in the course of adjudicatory proceedings"—that is, "materials on which a court relies in determining the litigants' substantive rights"—"become documents to which the presumption of public access applies." *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408–09 (1st Cir. 1987) (emphasis added). Where a sealed document "is not relevant to any issue" before the court, "it is not a 'judicial document' within the meaning of the decisions requiring unsealing of documents filed with a court." *Trump v. Deutsche Bank AG*, 940 F.3d 146, 152 (2d Cir. 2019). As the Third Circuit has explained:

> [T]he issue of whether a document is a judicial record should turn on the use the court has made of it rather than on whether it has found its way into the clerk's file. To be considered a judicial record, to which the common law right of access properly attaches, "the item filed must be relevant to the performance of

> the judicial function and useful in the judicial process in order
> for it to be designated a judicial document."

*N. Jersey Media Grp. Inc v. United States*, 836 F.3d 421, 435–36 (3d Cir. 2016)

(citation omitted) (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir.

1995)); *see also Newsday LLC v. County of Nassau*, 730 F.3d 156, 166–67 (2d

Cir. 2013) ("[W]e determine the degree of judicial reliance on the document

in question and the relevance of the document's specific contents to the na-

ture of the proceeding."); *In re Application of United States for an Order Pur-

suant to 18 U.S.C. § 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) ("documents

filed with the court are 'judicial records' if they play a role in the adjudica-

tive process, or adjudicate substantive rights"); *United States v. Kravetz*, 706

F.3d 47, 54–55 (1st Cir. 2013) (no presumptive right of access to subpoenas

and related documents because subpoenas were not undertaken to dispose

of any relevant issue in the case); *United States v. El-Sayegh*, 131 F.3d 158,

163 (D.C. Cir. 1997) ("We [] hold that what makes a document a judicial

record and subjects it to the common law right of access is the role it plays

in the adjudicatory process.").

### 3. Litigants cannot transform discovery materials into "judicial records" just by filing them.

This understanding of what a "judicial record" is comports with and advances the policy interests that the common-law right of access protects. "[F]ocus[ing the analysis] . . . on the use that was made" of the document at issue allows the court "to determine whether access to [it] would materially assist the public in understanding the issues." *Newsday*, 730 F.3d at 167; *see also AbbVie Products*, 713 F.3d at 62 ("access to the complaint is almost always necessary if the public is to understand a court's decision").

Conversely, information that is *not* relevant to the issues would *not* "materially assist the public" in understanding the issues in the case. *See Newsday*, 730 F.3d at 167. That is why "[t]he mere filing of a document does not transform it into a judicial record." *Advance Local Media*, 918 F.3d at 1167.

If it were possible to convert "raw discovery" into a judicial record just by attaching it to a substantive motion—irrespective of whether the material has any bearing on the issues the motion asks the court to decide—the general rule that "there is no common-law right of access" to discovery materials could be easily bypassed. *See Chicago Tribune*, 263 F.3d at

1311; *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993); *cf. Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("pretrial depositions and interrogatories are not public components of a civil trial" because they "were not open to the public at common law" and are still "conducted in private").  Introducing materials into the docket for purposes collateral to the issues "cannot ipso facto create a presumption of access" because "such a rule would bootstrap materials that are not closely related to judicial proceedings into judicial documents."  *See Newsday*, 730 F.3d at 167.

In sum, this Court and its sister circuits agree that even if a document is filed on the docket, it is not a judicial record subject to the presumption of public access *unless*—at a minimum—it played a role in the court's decision.  Using a brief and its attachments as a Trojan horse to sneak otherwise-irrelevant documents into the record does not automatically turn them into judicial records.

**B.    The emails at issue here played no role in the court's decision.**

The private emails at issue here do not meet this standard.  Plaintiffs attached these emails in bulk to a supplemental brief as soon as they were produced, relegating its references to them almost entirely to footnotes.  This was not surprising, as the emails had nothing to do with whether

UNOS was an agency or with any other aspect of the APA and due process claims before the district court.  The court ultimately excluded them from the administrative record entirely and did not consider them in conjunction with any of its rulings.

Had the district court asked the right question in analyzing whether these emails were judicial records—whether they were "integral to the court's resolution of the substantive motion[]" (*Advance Local Media*, 918 F.3d at 1168)—it would have concluded that they were not.  Whether the UNOS emails were "integral" to the issues before the court depends on what those issues *were*—namely, whether UNOS was an agency for purposes of the APA, whether the actions of either UNOS or HHS were arbitrary and capricious under the APA, and whether Plaintiffs got whatever process might have been due them under the Constitution and federal regulations.  The emails were irrelevant to these questions, and the court (rightly) declined to consider them in resolving the issues before it.  The emails were not relevant at all, much less "integral" to the court's decision.

### 1. The district court expressly declined to consider the emails in deciding the APA claim.

As the court's opinion itself makes clear, the UNOS emails were in no way "integral to the 'judicial resolution of the merits'" of the APA claim. *Advance Local Media*, 918 F.3d at 1167. To the contrary, the court affirmatively excluded them from the administrative record underlying that claim.

### a. Because UNOS is not an agency, the emails were neither part of the administrative record nor germane to the merits.

First and foremost, the emails were not part of the administrative record because the district court had correctly concluded that UNOS was not an agency. This analysis "focuse[d] on . . . structural aspects of OPTN: (a) The text and purpose of Section 372 of the National Organ Transplantation Act, including the organizational structure of the OPTN, and the level of government control of operations"; and "(b) Whether the OPTN has any authority in law to make decisions," "the nature of such decisions," and "whether the OPTN make[s] binding rules of general application or determine[s] rights and duties through adjudication." *Callahan*, 434 F. Supp. 3d at 1343–44 (quotation marks and citations omitted). To answer these ques-

tions, the district court looked to the statute's language and structure, legislative history, case law, relevant regulations, and the OPTN bylaws.  *See id.* at 1344–52.  It did not rely on any discovery materials at all.

"The consequence of [the district court] having held that the OPTN is not an agency is that only actions *by HHS* are subject to judicial review under the APA."  *Id.* at 1352 (emphasis added).  This, in turn, had consequences for "[t]he final threshold APA question before the Court": "what constitutes the boundaries of the administrative record" that HHS "considered."  *Id.* at 1354.  The district court was reluctant to "exclu[de] documents considered by UNOS entirely," as "HHS's adoption of UNOS's policymaking justifications may in some circumstances impute the 'consideration' requirement to UNOS."  *Id.* at 1354–56.   But "the same [could ]not be said for [the alleged] 'bad faith,' absent a showing that HHS was involved in, or at the very least, aware of [it]."  *Id.* at 1356.  The emails "did not reveal much in the way of [improper] coordination with Intervenors" (ECF 298 at 3), and even what the court called "arguable evidence of bias, or at least, individuals' sporadic expressions of bad faith or agenda" was not relevant to

the APA issue, because "Plaintiffs fail[ed] to tie any of this alleged misconduct to HHS."  434 F. Supp. 3d at 1356; *see also id.* at 1363 ("proffered evidence of bad faith" is "notable for what it does not show, namely any connection to Defendant HHS's basis for its actions").  For that reason, the district court held that the emails "are not properly part of the administrative record."  *Id.* at 1356.

In short, the district court affirmatively held that the emails *could not be considered* in the context of the APA issues.  This alone should have led the court to leave the emails under seal.

> **b.  If UNOS *were* an agency, the emails would have been protected from disclosure and irrelevant to the court under the deliberative process privilege.**

Even if UNOS *had* been an agency, the result would have been the same, as the emails would have been subject to the deliberative process privilege that protects "predecisional" documents from disclosure and excludes them from the administrative record.  Because the "inclusion in an agency record of documents reflecting internal agency deliberations could hinder candid and creative exchanges regarding proposed decisions and alternatives . . . the policy of non-disclosure protects the integrity of the decisionmaking process and ensures that agency actions are judged based on

42

what was decided, not on what was considered." *Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 143 (D.D.C. 2002) (quotation marks and citations omitted).

For the deliberative process privilege to apply, a document must be both "*predecisional*, i.e., prepared in order to assist an agency decisionmaker in arriving at his decision," and "*deliberative*, i.e., a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *See Fla. House of Representatives v. U.S. Dep't of Commerce*, 961 F.2d 941, 945–46 (11th Cir. 1992) (emphasis added) (citations omitted).

The UNOS emails at issue here satisfy both prongs. They are predecisional because they were created during the period in which the liver policy was still being developed. ECF 223 at 8–72 (reciting bases for privilege for each document). They are also deliberative because they are communications in which participants discuss, share opinions about, debate, or analyze liver allocation policy. *Id.*; *see Fla. House of Representatives*, 961 F.2d at 949 ("The only inquiry that should be made . . . is: Does the information reflect the give-and-take of the consultive process?").

The district court's preliminary injunction decision supports this con-
clusion.  The court took pains to explain that while it "ha[d] held that the
deliberative process privilege was waived by UNOS *for the purpose of discov-
ery*" — a holding with which UNOS profoundly disagrees, given that it
raised the privilege objection as soon as it became apparent — the court
"d[id] not hold that these deliberative communications are properly part of
the administrative record."  *Callahan*, 434 F. Supp. 3d at 1356 (emphasis by
the district court).  The court affirmed that these emails "would not be part
of the record even if the Court were to have held that the OPTN was an
agency," because "'[j]udicial review of agency action should be based on an
agency's stated justifications, not the predecisional process that led up to
the final, articulated decision.'"  *Id.* (quoting *Ad Hoc Metals Coal.*, 227 F.
Supp. 2d at 143).  Where the court's analysis went awry, however, was
when it said that the documents were nonetheless "judicial records" simply
because they had been filed with the Court in an effort to supplement the
administrative record and attached as exhibits to a brief.  ECF 298 at 6, 8.
This analysis does not comport with the definition of "judicial records" in
this Court's cases.

Critically, and consistent with the policy interests underlying the deliberative process privilege, producing these documents would chill the OPTN decisionmaking process by disincentivizing frank and candid discussion of organ allocation policy. ECF 223 at 6–8; *see also Moye, O'Brien, O'Rourke, Hogan & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1281 (11th Cir. 2004) (privilege applied where disclosure would encourage employees to "decline[] to engage in open and frank discussions . . . for fear that their comments would be subjected to public scrutiny"). *See generally infra* Part II.B (discussing chilling effect in context of good cause to seal).

For these reasons, even if UNOS had been ruled an agency, the deliberative process privilege should have prevented disclosure of the emails and precluded their consideration in relation to Plaintiffs' APA claim.

### 2. The emails did not relate to the due process issue.

As for the due process analysis, the district court did not even have to consider whether to exclude the emails from the record because there was no need to discuss them at all. Plaintiffs did not cite any of these documents in connection with the due process claim, in terms of either the threshold "state actor" analysis or the issue of constitutional deprivation.

The district court "[a]ssum[ed] without deciding for present purposes that the Acuity Circles Policy is state action" and that there was "a protected ['life'] interest" in a position on the transplant waitlist, holding ultimately that there had been no deprivation of due process. *See Callahan*, 434 F. Supp. 3d at 1371–73; *see also supra* Part I.B.1 (emails irrelevant to agency-status and state-action questions). The emails were not relevant to any of this, much less "integral to the judicial resolution" of the due process claim. *Advance Local Media*, 918 F.3d at 1167.

*     *     *

In sum, these emails played no role in the court's resolution of any of the issues before it—either the threshold questions or the merits of the claims. To the contrary, the court expressly excluded them from the administrative record and *declined* to consider them. They were not "judicial records" under *Advance Local Media*, and the public's right of access does not attach to them. It makes no difference that these emails were tacked onto a brief. Indeed, the brief was *itself* superfluous, as the district court had allowed it "as a sanction" against UNOS, not because it required additional briefing to assist it in resolving the issues. ECF 298 at 3. The district

court's legal error in deciding whether the emails were "judicial records" is enough by itself to require reversal.

## II. Even if the right of access applied, UNOS has shown good cause to keep the emails sealed.

Even if there were a presumptive right of access to the UNOS emails, this right "is not absolute"; it "may be overcome by a showing of good cause." *Romero*, 480 F.3d at 1245. The district court erred in concluding that UNOS had not made a sufficient showing.

To determine whether a party has established "good cause" to overcome the public's right of access, a court must "balance the respective interests" of the public and party seeking protection (*Chicago Tribune*, 263 F.3d at 1311–15), in light of the "the relevant facts and circumstances of the particular case." *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013) (quotation omitted). Where—as here—the interests in nondisclosure "overcome[] the interest of the public in access[]," there is "good cause" for the documents to remain under seal. *Romero*, 480 F.3d at 1246.

Factors to consider include, as relevant here, "whether access is likely to promote public understanding of historically significant events";

"whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage" (*AbbVie Products*, 713 F.3d at 62 (quoting *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983))); and "whether allowing access would . . . harm legitimate privacy interests" and "the degree of and likelihood of injury if made public" (*Romero*, 480 F.3d at 1246).  Here, the district court balanced these factors incorrectly, giving too much weight to the public right of access (particularly in light of Plaintiffs' illegitimate purposes) and *no* weight to the private and public interests that would be harmed by unsealing.

### A.  The district court gave too much weight to the public interest in these emails, which were irrelevant to any issue in the case and were both requested and filed for an improper purpose.

The court weighed the public interest too heavily, largely as a function of its errors in the "judicial record" analysis, which assumed that the documents were "part of the court record" merely because they had been attached to a brief.  *Compare* ECF 298 at 8 *with Advance Local Media*, 918 F.3d at 1167 ("The mere filing of a document does not transform it into a judicial record.").

Even if a document *is* a judicial record, "[d]ecisions less central to merits resolutions implicate lesser right-to-access considerations." *Romero*,

480 F.3d at 1246 (quoting 8 Charles Alan Wright et al., Federal Practice and Procedure § 2035 (2d ed. 1994)).  Unlike the materials at issue in *Romero*, the emails in this case are not related to "the merits of the underlying controversy" for the reasons explained at length above.  *See id.* at 1246; *see also, e.g.*, *United States v. Miller*, 775 F. App'x 974, 977 (11th Cir. 2019) (party seeking access "had minimal interest in the materials because they were likely irrelevant and inadmissible").  The district court reasoned that they were "part of the court record for other purposes," but it did not actually *use* them for any such purpose.  *See supra* Part I.B.  Nor did the emails have anything to do with "the conduct of the court"; whereas *Romero* involved the propriety of a contempt order, UNOS never sought to seal these documents as a sanction against Plaintiffs.  *See* 480 F.3d at 1242–43, 1246.  The district court was incorrect in suggesting otherwise.  ECF 298 at 9.

As discussed above, these emails were irrelevant to the court's resolution of the issues, as well as to the agency action underlying this case.  To be sure, formulation of organ allocation policy is a matter of public interest.  But as the district court aptly recognized, Plaintiffs failed to show that

"HHS was involved in, or at the very least, aware of the [emails purport-edly evidencing] bad faith[] when it adopted UNOS's policymaking ra-tionale." *Callahan*, 434 F. Supp. 3d at 1356.  Accordingly, the emails would not promote public understanding of why the only government agency in this case—HHS—made the decision it did.  *See id.* ("these conversations are not properly part of the administrative record").  And the public "has al-ready been permitted substantial access" to information about why HHS made the decision through the administrative record—which is on the pub-lic docket—and to information about the policy itself and its adoption by the UNOS Board—which is also a matter of public record.  *See Advance Lo-cal Media*, 918 F.3d at 1169 (quotation omitted).  The public also has access to the parties' briefs and other exhibits (with limited redactions) and to the district court's extensive decision in this case.

The district court discounted the emails' lack of relevance, reasoning that "relevancy, absent a 'specific showing' that the materials were offered for an 'abusive or improper' purpose, is not a sufficient ground to seal doc-uments."  ECF 298 at 4–5 (quoting *Romero*, 480 F.3d at 1248).  This is incor-rect for two reasons.

*First*, it reads too much into *Romero*, which did not impose such a categorical rule but rather balanced the specific interests before it and determined that the particular motion before it was not "so irrelevant or improper as to be sealed[] [w]ithout a more specific showing" of abuse. *Romero*, 480 F.3d at 1248. There, it was a matter of degree, calculated after a holistic analysis of the "nature and character of the information in question." *See id.* at 1246 (quoting *Chicago Tribune*, 263 F.3d at 1315).

Indeed, courts have held that courts weighing disclosure of documents should exercise "a sensitive appreciation of the circumstances that led to [their] production." *Chicago Tribune*, 263 F.3d at 1311 (quoting *Nixon*, 435 U.S. at 603); *see also AbbVie Products*, 713 F.3d at 62. A showing that a document was obtained for improper purposes (or under false pretenses) underscores the lack of any weighty public interest in its disclosure and weighs in favor of finding "good cause" to retain the seal. *Advance Local Media*, 918 F.3d at 1169 ("illegitimate purpose[]" weighs in favor of finding good cause).

*Second*, there *was* an improper purpose in Plaintiffs' obtaining and filing the emails at issue here. As an initial matter, Plaintiffs obtained the

emails under false pretenses.  Plaintiffs' Requests No. 11 and 12 sought email communications between UNOS employees and "New York-Affiliated" individuals, defined to include anyone who represented that he or she was "acting on behalf of or is affiliated with the Greater New York Hospital Association" or the Boies Schiller law firm.  ECF 149-2 at 5, 11. After hearing UNOS's objection, the district court ordered Plaintiffs "to narrow" these requests by substituting "a more precise definition of the 'New York-Affiliated Individuals.'"  ECF 166 at 4.  Instead, Plaintiffs *broadened* the definition to include three specific UNOS volunteers who had no affiliation at all with the Greater New York Hospital Association or Boies Schiller.  Those individuals included a surgeon from the University of Chicago who had served as UNOS Board president; a surgeon from San Francisco who had served as chair of the UNOS Liver Committee, and the CEO of a nonprofit organ-recovery organization that covers parts of New England but specifically not New York.  ECF 171-2 at 2–3.

By falsely representing that these individuals were affiliated with the Greater New York Hospital Association—despite publicly available infor-

mation to the contrary—Plaintiffs were able to discover private email correspondence that they otherwise would not have received.  The lack of any New York affiliation takes these documents out of Plaintiffs' only proffered justification for this discovery—namely, to "show that any agency action was undertaken 'in bad faith or with an unalterably closed mind'" that favored the New York-based hospitals.  ECF 168 at 3 (quoting letter from Plaintiffs' counsel); ECF 171 at 5–7.

Although UNOS pointed out this misrepresentation more than once, the district court never confronted it, either in the discovery orders themselves or in response to the motion to unseal.  In the unsealing order, the court's only response was to say that even if the requests were improper for some reason, "sealing materials subject to the common law right of access is generally not a proper sanction for misconduct."  ECF 298 at 9.  That may be so, but it misses the point; Plaintiffs' improper purpose in requesting these irrelevant documents further undermines any interest the public has in seeing them.

In fact, Plaintiffs' improper purpose is even more apparent today than it was when the district court issued its unsealing order. It is now beyond dispute that Plaintiffs and their counsel sought these documents—and now seek to make them public—to support a broader campaign against UNOS and its consensus-driven policies. Two weeks ago, Jones Day and many of the same Plaintiffs filed a new lawsuit that seeks to enjoin another, similarly structured organ allocation policy. *See* Compl. for Declaratory & Injunctive Relief, *Adventist Health System/Sunbelt, Inc. d/b/a AdventHealth Orlando, et al. v. U.S. Dep't of Health & Human Services and UNOS, et al.*, No. 20-101 (S.D. Iowa Dec. 9, 2020), ECF 1. The complaint raises all the same issues that the courts in this case have already resolved—including whether HHS regulations require proposed allocation policies to go through additional procedural steps and publication in the Federal Register; whether it was arbitrary and capricious for HHS to direct UNOS in July 2018 to formulate policies that did not depend on DSAs; whether UNOS is an agency for purposes of the APA; and whether a new, non-DSA allocation policy should be enjoined as arbitrary and capricious. *See id.* Although at least two of the plaintiffs in that case sit within the

Eleventh Circuit, they chose to file this new suit in Iowa, undoubtedly to avoid the adverse rulings already rendered in this case.

In the new lawsuit, Plaintiffs have specifically referenced the sealed emails, mischaracterizing them to spin a tale about how "a subset of individuals" have "infiltrated UNOS's leadership" and are "propos[ing] new policies that favor[] their own business interests by diverting organs from rural and low-income communities to more populous areas such as New York and San Francisco." Br. in Supp. of Mot. for TRO at 8–9, *Adventist Health*, ECF 4-1. Citing the district court's decision in this case—but leaving out the part where they lost—the hospitals claim (incorrectly) that the district court here "found [that] UNOS exhibited 'colorable evidence of animosity and even some measure of regional bias,' as well as 'bad faith, undisclosed ex parte communications, and improper predetermination.'" *Id.* at 9. In a footnote, the hospitals and their counsel tip their hand, representing that "[s]pecific examples of this animosity and bias were presented in prior litigation, but remain under seal." *Id.* n.1. Later, the plaintiffs and their counsel took their misuse of the emails even further, defending their failure to allege any facts to support their baseless claims of "corruption"

by suggesting that the district court in Iowa conduct an "In Camera Review of Documents Currently Under Seal in the *Callahan* Litigation." Reply in Supp. of TRO, *Adventist Health*, ECF 33-1 at 10. Although the outcome in this *Callahan* litigation will not help their cause (which explains the move to Iowa), Plaintiffs obviously hope the sealed emails will.

Plaintiffs' true purpose in moving to unseal these documents has now become undeniable: to publicize private emails they should never have received, so that they can use the emails as part of their broader campaign—both in court and otherwise—against UNOS and the volunteers who have historically disagreed with their policy positions. This is not a vindication of any "public right of access" to judicial documents; it is a misuse of the discovery process, plain and simple.

In short, in this case, unlike in *Romero*, there can be no doubt that the submission of these documents into the court file *was* "so irrelevant or improper as to be sealed." 480 F.3d at 1248.

**B.** **The district court gave no meaningful weight to the chilling effect of releasing these emails and the substantial harm it will cause to both public and private interests.**

On the other side of the scale, the district court essentially disregarded the interests that would be furthered by keeping the emails sealed.

Rather than aggregating these interests together and balancing them against the public interest in access, the district court considered them serially and in isolation, holding without analysis that they did not outweigh the public's right of access. This was an abuse of discretion.

UNOS's organ-allocation policies are the product of robust internal debate among "Board and Committee members [who] work collaboratively and respectfully to build consensus on the important policy issues [UNOS] address[es]." ECF 223 at 4. Essential to this process is the "free flow of advice, recommendations, and opinions, including open and frank discussions amongst and between UNOS personnel; [and] between UNOS personnel and Board and Committee Members of the OPTN." *Id.* at 6.

Disclosure would hinder that flow, to the detriment of the policy-making process. As discussed in the context of the deliberative process privilege (*supra* Part I.B.1.b ), "human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances to the detriment of the decisionmaking process." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975) (citation omitted);

*see also Klamath*, 532 U.S. at 8–9 (it is "obvious" that "if each remark is a potential item of discovery and front page news," individuals "will not communicate candidly among themselves"). If these emails are disclosed, Board and Committee members will (reasonably) anticipate that further confidential communications may be aired in future litigation, disincentivizing the spirited, frank discussion necessary for optimal policymaking. This chilling effect bears directly on "whether allowing access would . . . harm legitimate privacy interests," and "the degree of and likelihood of injury if made public." *Romero*, 480 F.3d at 1246.

The consequences of unsealing will be felt both by UNOS itself—as a forum for community policymaking—and the specific UNOS volunteers who have disagreed with Plaintiffs on policy matters in the past and may disagree with them in the future. In discovery, Plaintiffs did not seek a complete set of the communications related to the adoption of the liver allocation policy, or even a random sampling; instead, they specifically targeted communications between UNOS employees and certain UNOS volunteers whom they knew had opposed their policy positions, with the aim of exposing those individuals to public criticism and even embarrassment.

ECF 223 at 4 (Plaintiffs' effort "appears to be an attempt to intimidate individuals who have expressed opinions that the Plaintiffs object to").  Plaintiffs "are sending a message to [the targeted individuals'] colleagues on the Board that if [their] preferred policy is not selected, then any OPTN Board Member who disagrees with Plaintiffs' position is subject to having their communications publicly disclosed in the future."  *Id.* at 7.  This "will certainly make Board Members think twice before criticizing . . . Plaintiffs' arguments or positions."  *Id.*

The Supreme Court and this Court have both warned against this very result.  *See, e.g., U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 12 (1988) (disclosure of presentence reports would have "a chilling effect on the willingness of various individuals to contribute information"); *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 359–60 (1979) (decisionmakers should "receive the unimpeded advice of [their] associates," and "if advice is revealed, associates may be reluctant to be candid and frank"); *Broward Bulldog, Inc. v. U.S. Dep't of Justice*, 939 F.3d 1164, 1194 (11th Cir. 2019) (during deliberations, agencies should be allowed to "freely

explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny" (citation omitted)).

Worse still, chilling effects can make for less sound policies, as "candid and creative exchanges regarding proposed decisions and alternatives" can "lead to an overall decrease in the quality of decisions." *Ad Hoc Metals Coal.*, 227 F. Supp. 2d at 143 (citing *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1326 (D.C. Cir. 1984)). UNOS's policymaking process affects thousands of patients, hospitals, and other members of the transplant community, all of whom have a considerable interest in ensuring that UNOS's policies are of the highest quality—as does society at large. An "overall decrease in the quality of decisions" from the "chilling effect on open discussion" does not just harm UNOS or the individual speakers; it is a *societal* harm. *See Ga. Aquarium, Inc. v. Pritzker*, 134 F. Supp. 3d 1374, 1379 (N.D. Ga. 2014) (quoting *Ad Hoc Metals Coal.*, 227 F. Supp. 2d at 143). The district court erred in failing to appreciate that. *See* ECF 298 at 8 ("UNOS has not identified specific harm to specific persons").

In some circumstances, "a party's privacy or proprietary interest" alone may "overcome[] the interest of the public in accessing the documents." *Romero*, 480 F.3d at 1246. This is surely one of them. Moreover, the chilling effect is also a matter of *public* interest. Considered together with Plaintiffs' improper purpose, the interests that support continuing the seal should have outweighed the public's right to access judicial documents, when the emails at issue played no role in the resolution of Plaintiffs' claims.

*      *      *

In sum, even if the district court were correct that the public has a right and interest in accessing these emails, that interest is weak indeed, given the emails' irrelevance to the issues before the district court and Plaintiffs' improper purpose and conduct in requesting and seeking to unseal them. Good cause exists to keep the emails under seal, and the district court abused its discretion in holding otherwise.

## CONCLUSION

For all of these reasons, the unsealing order should be reversed.

Dated: December 21, 2020      Respectfully submitted,

*/s/ Linda T. Coberly*

Jay S. Blumenkopf

GORDON REES SCULLY

   MANSUKHANI, LLP

One Battery Park Plaza

28th Floor

New York, NY 10004

(212) 453-0798

jblumenkopf@grsm.com

Sara Anderson Frey

GORDON REES SCULLY

   MANSUKHANI, LLP

1717 Arch Street

Suite 610

Philadelphia, PA 19103

(215) 717-4009

sfrey@grsm.com

Kimberly C. Sheridan

GORDON REES SCULLY

   MANSUKHANI, LLP

55 Ivan Allen Jr. Blvd., N.W.

Suite 750

Atlanta, GA 30308

(404) 978-7324

ksheridan@grsm.com

Linda T. Coberly

   *Counsel of Record*

Daniel D. Rubinstein

Thomas G. Weber

Sean H. Suber

Melanie L. Lee

WINSTON & STRAWN LLP

35 W. Wacker Drive

Chicago, IL 60601

(312) 558-5600

LCoberly@winston.com

Lauren Gailey

WINSTON & STRAWN LLP

1901 L Street NW

Washington, DC 20036

(202) 282-5000

*Counsel for Defendant-Appellant United Network for Organ Sharing*

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 10,746 words.

This document complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Book Antiqua, using Microsoft Office Word 2016.

Dated:  December 21, 2020          By:    */s/ Linda T. Coberly*
                                         Linda T. Coberly

                                         *Counsel for Defendant-Appellant*
                                         *United Network for Organ Sharing*

# CERTIFICATE OF SERVICE

I certify that, on this date, the foregoing document was filed via the court's electronic-filing system. The system automatically generated and sent a notice to all counsel of record who are registered CM/ECF users. Under 11th Circuit Rule 25-3(a), no independent service by other means is required.

Dated: December 21, 2020    By:   */s/ Linda T. Coberly*
                                        Linda T. Coberly

                                        *Counsel for Defendant-Appellant*
                                        *United Network for Organ Sharing*